RETURN RECEIPT REQUESTED ELECTRONICALLY



9314 8001 1300 3543 8688 32

AG-PRO OHIO, LLC
11204 ROYALTON RD
NORTH ROYALTON OH 44133-4417

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV20942159 | D1 CM | 43309853 |

Rule 4 (B) Ohio

Rules of Civil Procedure

DENISE RIDENOUR  
VS  
AG-PRO OHIO, LLC

PLAINTIFF

DEFENDANT

# SUMMONS

AG-PRO OHIO, LLC  
11204 ROYALTON ROAD  
NORTH ROYALTON OH 44133

You have been named defendant in a sums complaint (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.

Said answer is required to be served on:



**Plaintiff's Attorney**

BRIAN D SPITZ  
25200 CHAGRIN BOULEVARD, SUITE 200  
BEACHWOOD, OH 44122-0000

Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)

Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.

If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.

Case has been assigned to Judge:

KATHLEEN ANN SUTULA  
Do not contact judge. Judge's name is given for attorney's reference only.

NAILAH K. BYRD  
Clerk of the Court of Common Pleas



By _____  
Deputy

| DATE SENT |
|---|
| Dec 29, 2020 |

COMPLAINT FILED  12/28/2020

CMSN130



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
1200 Ontario Street
Cleveland, Ohio 44113

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**December 28, 2020 16:10**

By: DANIEL S. DUBOW 0095530

Confirmation Nbr. 2144485

| | |
|---|---|
| DENISE RIDENOUR | CV 20 942159 |
| vs. | |
| AG-PRO OHIO, LLC | **Judge:** KATHLEEN ANN SUTULA |

**Pages Filed:** 14

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| DENISE RIDENOUR<br>1120 West 42nd Place<br>Lorain, Ohio 44052 | ) ) ) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | ) ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DAMAGES**<br>**AND REINSTATEMENT** |
| AG-PRO OHIO, LLC<br>11204 Royalton Road<br>North Royalton, Ohio 44133 | ) ) ) ) ) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| Defendant. | ) | |

Plaintiff, Denise Ridenour, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

**PARTIES AND VENUE**

1. Ridenour is a resident of the city of Lorain, county of Lorain, state of Ohio.

2. Ag-Pro Ohio, LLC (hereinafter, "Ag-Pro") is a foreign limited liability company that operates a business located at 11204 Royalton Road, North Royalton, Ohio 44133.

3. Ag-Pro was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

4. Ag-Pro was at all times hereinafter mentioned an employer within the meaning of R.C. § 4123.90.

5. Ag-Pro conducts business in Cuyahoga County.

6. All or part of Ridenour's claims for relief arose from conduct that occurred in Cuyahoga County.

7. Therefore, personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1) and (4).

8. Venue is proper pursuant to Civ. R. 3(C)(3)&(6).



9. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint.

## FACTS

10. Ridenour is a former employee of Ag-Pro.

11. Ridenour is female.

12. Ridenour began working for Shearer Equipment in September 2010.

13. Ag-Pro acquired Shearer Equipment on or about January 30, 2019.

14. Ag-Pro retained the substantially the same structure and processes following the acquisition.

15. Ridenour retained her seniority following the Ag-Pro acquisition.

16. Following the acquisition, Ag-Pro transferred Ridenour to a Service Manager position.

17. Ridenour received positive performance reviews during her employment prior to the Ag-Pro acquisition.

18. Ridenour did not receive any meaningful discipline for performance during her employment prior to the Ag-Pro acquisition.

19. In March 2019, Ag-Pro employed Ridenour as the Service Manager for its North Royalton location.

20. During all material events asserted herein, John Mordesovich was the General Manager of the Ag-Pro location where Ridenour worked.

21. During all material events asserted herein, service managers receive bonus checks based on performance.

22. Ridenour received bonuses every month after Ag-Pro instituted the bonus program following the acquisition of Shearer Equipment.

23. Ridenour received a bonus check in April 2020.



24. Ridenour received a bonus check in May 2020.

25. Ridenour received a bonus check in June 2020.

**(Ridenour Suffers Gender Discrimination And Complains About Sexual Harassment)**

26. When Ridenour first started working at the North Royalton location, Ridenour worked with a service clerk.

27. In May 2019, Ag-Pro moved Ridenour's service clerk to a different location.

28. When Ag-Pro moved Ridenour's service clerk, it never hired another service clerk to work with Ridenour.

29. Upon information and belief, most of Ag-Pro's other service managers work with a service clerk.

30. During all material events asserted herein, all the other service managers in North Royalton worked with service clerks.

31. Service clerks help provide the service managers with coverage for lunch breaks.

32. Service clerks help provide the service managers with coverage for having rotating weekends off.

33. Ridenour was the only female service manager at her location.

34. Ag-Pro did not hire a service clerk to work with Ridenour because of Ridenour's gender.

35. Ag-Pro allowed technicians to assist service managers with unloading trucks.

36. Ag-Pro would not allow technicians to assist Ridenour with unloading trucks.

37. Ag-Pro would not allow technicians to assist Ridenour with unloading trucks because of Ridenour's gender.

38. Ag-Pro placed a hiring freeze on Ridenour's department.

39. Ag-Pro did not place a hiring freeze on the other departments in Ridenour's store's managers.



40. Ag-Pro placed a hiring freeze on Ridenour's department so that Ridenour could not hire more employees to help her out with her workload.

41. Ag-Pro placed a hiring freeze on Ridenour's department because of her gender.

42. On or about June 3, 2020, Johnathon Gunther, a male employee, told Ridenour that he could see his "dick hitting the back of [Denise's] throat."

43. Ridenour did not ask for Gunther to tell her that Gunther could see his "dick hitting the back of [Denise's] throat."

44. Ridenour had never engaged Gunther physically prior to Gunther stating to Ridenour that he could see his "dick hitting the back of [Denise's] throat."

45. Ridenour was embarrassed when Gunther told Ridenour that he could see his "dick hitting the back of [Denise's] throat."

46. Ridenour was offended when Gunter told Ridenour that he could see his "dick hitting the back of [Denise's] throat."

47. Ridenour complained about Gunther's sexual harassment to Johnmark Ocheltree.

48. During all material events asserted herein, Ochletree was a Division Service Manager for Ag-Pro.

49. During all material events asserted herein, Michael Murphey was the Division President.

50. After complaining about sexual harassment to Ochletree, Ridenour met with Mordesovich, Ochletree, and Murphey regarding her complaint about Gunther's sexually harassing statement.

51. Mordesovich issued Ridenour a written discipline on June 11, 2020.

52. Mordesovich issued Ridenour a written discipline on June 11, 2020 for alleged conduct that occurred while Ridenour was on paid time off and not at the store.



53. Mordesovich issued Ridenour a written discipline less than two weeks after she complained about sexual harassment.

54. Mordesovich issued Ridenour a written discipline on June 11, 2020 in retaliation for making a protected complaint.

55. Ag-Pro disciplined Ridenour on June 11, 2020 although Ridenour received performance-based bonus checks for the previous three months.

56. Upon information and belief, Ag-Pro did not discipline similarly-situated male managers in June 2020 for not hitting performance metrics if they had also hit performance metrics for the prior months.

57. Ag-Pro disciplined Ridenour on June 11, 2020 because of her gender.

58. In June 2020 after Ag-Pro issued Ridenour written discipline, Ag-Pro hired Scott Rogers.

59. Rogers is male.

60. Ag-Pro hired Rogers as a service manager.

61. Ag-Pro initially staffed Rogers at an Ag-Pro location in Burbank.

62. When Ag-Pro hired Rogers, it announced that Rogers would be working as the service manager at the North Royalton location.

63. Shortly after Ag-Pro hired Rogers, Ridenour saw that Rogers was on the North Royalton location's payroll.

64. Upon information and belief, Ag-Pro hired Rogers to replace Ridenour.

65. Ag-Pro replaced Ridenour with an individual outside of Ridenour's protected class, or, alternatively, allowed Ag-Pro to retain an individual outside of Ridenour's protected class to cover her job duties.



66. Upon information and belief, shortly after Ag-Pro replaced Ridenour with Rodgers, Ag-Pro hired a service clerk to work for and help out Rodgers.

**(Ridenour Suffers Workplace Injuries And Attempts To Utilize FMLA Leave)**

67. On or about November 12, 2019, Ridenour suffered a workplace injury (hereinafter, "November Shoulder OJI").

68. During the November Shoulder OJI, Ridenour was transporting a deck for a customer.

69. During the November Shoulder OJI, while Ridenour transported the deck, it shifted on the dolly and Ridenour reached for it to keep it from falling.

70. During the November Shoulder OJI, when Ridenour reached for the deck, it pulled her shoulder which resulted in an injury.

71. Ridenour immediately notified Mordesovich of the November Shoulder OJI.

72. Ridenour suffered a second workplace injury on or about November 21, 2019 (hereinafter, "November Knee OJI").

73. During the November Knee OJI, Ridenour was working outside the building for deliveries and pickups.

74. It was nighttime during the November Knee OJI.

75. During the November Knee OJI, the parking lot lights and the building lights were not working.

76. During the November Knee OJI, Ridenour hit the corner of her knee on a skid steer with a push box on it.

77. Ridenour immediately informed Mordesovich about the November Knee OJI.

78. Ridenour consulted with her physician about her shoulder and knee injuries.

79. Due to the COVID-19 pandemic, Ridenour's appointments were her physicians regarding her shoulder and knee injuries were rescheduled and canceled multiple times.



80. In June 2020, a specialist advised Ridenour that her shoulder injury was a torn rotator cuff.

81. In June 2020, a specialist advised Ridenour that she would require a cortisone shot and eight weeks of therapy to treat her torn rotator cuff.

82. As Ridenour was advised that she would need to do eight weeks of therapy for her torn rotator cuff, Ridenour applied to utilize Family Medical Leave Act leave.

83. Ridenour filed a claim for workers' compensation benefits on or about July 7, 2020, regarding the November Shoulder OJI and the November Knee OJI.

84. As of July 7, 2020, Ridenour worked for Ag-Pro for at least 12 months.

85. As of July 7, 2020, Ridenour had at least 1,250 hours of service for Ag-Pro during the previous 12 months.

86. As of July 7, 2020, Ag-Pro was a covered employer pursuant to the FMLA.

87. As of July 7, 2020, Ridenour was eligible to utilize FMLA leave.

88. As of July 7, 2020, Ridenour was entitled to utilize FMLA leave to seek treatment for her shoulder injury.

89. On July 7, 2020, Ridenour communicated with Mordesovich and Lauren McElreath, a claims manager for Ag-Pro, regarding Ridenour applying for FMLA leave.

90. Mordesovich and Ag-Pro understood as of July 7, 2020, that Ridenour intended to initiate her FMLA leave on July 9, 2020.

### (Ag-Pro Terminates Ridenour's Employment)

91. Ag-Pro conducted a service review of the North Royalton location on or about June 25, 2020.

92. The June 2020 service review of Ridenour's location reflected that the North Royalton location received the largest percentage increase to EBIDA in the district, with 141.33% of the target.

93. Ag-Pro terminated Ridenour's employment on or about July 9, 2020.



94. Ag-Pro terminated Ridenour's employment because of her gender.

95. Ag-Pro terminated Ridenour's employment because she made a complaint regarding sexual harassment.

96. Ag-Pro terminated Ridenour's employment because she filed a claim for workers' compensation benefits.

97. Upon information and belief, Defendant has a progressive disciplinary policy.

98. Defendant violated its own progressive disciplinary policy when it terminated Ridenour's employment.

99. Upon information and belief, Defendant does not violate its own progressive disciplinary policy when terminating the employment of male employees.

100. Upon information and belief, Defendant does not violate its own progressive disciplinary policy when terminating the employment of individuals who have not made protected complaints.

101. Upon information and belief, Defendant does not violate its own progressive disciplinary policy when terminating the employment of individuals who have not suffered workplace injuries.

102. Upon information and belief, Defendant does not violate its own progressive disciplinary policy when terminating the employment of individuals who have not claims for workers' compensation benefits.

103. Defendant terminated Ridenour's employment in violation of its progressive disciplinary policy because of Ridenour's gender.

104. Defendant terminated Ridenour's employment in violation of its progressive disciplinary policy because in retaliation for Ridenour making a protected complaint.



105. Defendant terminated Ridenour's employment in violation of its progressive disciplinary policy because in retaliation for Ridenour filing a claim for workers' compensation benefits.

## COUNT I: GENDER DISCRIMINATION

106. Ridenour restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

107. Ridenour is a member of a statutorily protected class based on her gender under R.C. § 4112.01 *et seq*.

108. Defendant treated Ridenour differently than other similarly situated employees based on her gender.

109. Defendant discriminated against Ridenour on the basis of her gender throughout her employment with the company.

110. Defendant terminated Ridenour's employment without just cause.

111. Defendant terminated Ridenour's employment based on her gender.

112. Defendant's discrimination against Ridenour based on her gender violates R.C. § 4112.01 *et seq*.

113. Ridenour suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

114. As a direct and proximate result of Defendant's conduct, Ridenour suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: RETALIATION

115. Ridenour restates each and every prior paragraph of this complaint, as if it were fully restated herein.

116. Ridenour complained about sexual harassment in early July 2020.

Electronically Filed 12/28/2020 16:10 / / CV 20 942159 / Confirmation Nbr. 2144485 / CLAJB
The Employee's Attorney.™



117. Subsequent to Ridenour's reporting of sexual harassment, Defendant issued Ridenour a written discipline.

118. Subsequent to Ridenour's reporting of sexual harassment, Defendant terminated Ridenour's employment.

119. Defendant's actions were retaliatory in nature based on Ridenour's opposition to the unlawful discriminatory conduct.

120. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

121. Ridenour suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

122. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Ridenour, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT III: WORKER'S COMPENSATION RETALIATION

123. Ridenour restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

124. Ridenour suffered two workplace injuries in November 2019.

125. Defendant became aware that Ridenour suffered two workplace injuries in November 2019.

126. Ridenour filed a claim for worker's compensation benefits on or about July 7, 2020.

127. On or about July 9, 2020, Defendant terminated Ridenour's employment.

128. Defendant terminated Ridenour's employment in retaliation for Ridenour filing a claim for Worker's Compensation benefits.



129. Ridenour was discharged without just cause for filing a claim for Worker's Compensation benefits, Ridenour is therefore entitled to recover damages from defendant for its wrongful discharge of her in retaliation for filing a claim for Worker's Compensation benefits under R.C. § 4123.90.

130. As a direct and proximate result of Defendant's conduct, Ridenour has suffered and will continue to suffer damages.

## COUNT IV: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

131. Ridenour restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

132. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating an employee to avoid a Workers' Compensation claim.

133. A clear public policy exists and is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because she engages in protected activity under Ohio law.

134. Specifically, in *Sutton v. Tomco Machine*, the Ohio Supreme Court noted "we recognize a common-law tort claim for wrongful discharge in violation of public policy when an injured employee suffers retaliatory employment action after an injury but before he or she files, institutes, or pursues a workers' compensation claim."(*Sutton v. Tomco Machine*, 129 Ohio.St. 3d 153, 163 (2011)).

135. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on her complaints of dangerous, unsafe, or illegal activity.



136. Defendant's termination of Ridenour's employment jeopardizes these public policies.

137. Defendant's termination of Ridenour's employment was motivated by conduct related to these public policies.

138. Defendant had no overriding business justification for terminating Ridenour's employment.

139. As a direct and proximate result of Defendant's conduct, Ridenour has suffered and will continue to suffer damages.

## COUNT V: RETALIATION IN VIOLATION OF THE FMLA

140. Ridenour restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

141. During her employment, Ridenour applied to utilize FMLA leave.

142. Ridenour was eligible to utilize FMLA leave at the time that she applied to utilize FMLA leave.

143. Ridenour was entitled to utilize FMLA leave at the time that she applied to utilize FMLA leave.

144. Defendant terminated Ridenour's employment two days after she applied for FMLA leave.

145. Defendant terminated Ridenour in retaliation for her applying to utilize FMLA leave.

146. Defendants willfully retaliated against Ridenour in violation of U.S.C. § 2615(a).

147. As a direct and proximate result of Defendant's wrongful conduct, Ridenour is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

## COUNT VI: UNLAWFUL INTERFERENCE WITH FMLA RIGHTS

148. Ridenour restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

149. Pursuant to 29 U.S.C. § 2601 *et seq.*, covered employers are required to provide employees job-protected unpaid leave for qualified medical and family situations.



150. Ag-Pro is a covered employer under the FMLA.

151. During her employment, Ridenour applied to utilize FMLA leave.

152. Ridenour was eligible to utilize FMLA leave at the time that she applied to utilize FMLA leave.

153. Ridenour was entitled to utilize FMLA leave at the time that she applied to utilize FMLA leave.

154. Defendant terminated Ridenour's employment two days after she applied for FMLA leave.

155. Defendant terminated Ridenour's employment prior to her being able to utilize FMLA leave.

156. Defendant terminated Ridenour's employment to interfere with her right to utilize FMLA leave.

157. Defendant unlawfully interfered with Ridenour's exercise of her rights under the FMLA in violation of Section 105 of the FMLA and section 825.220 of the FMLA regulations.

158. Defendant violated section 825.300(c)(1) of the FMLA and interfered with Ridenour's FMLA rights when Defendants did not honor Ridenour's use of FMLA leave.

159. As a direct and proximate result of Defendant's conduct, Ridenour is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs and reasonable attorneys' fees.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff Denise Ridenour requests judgment against all Defendants and for an Order:

a. Ordering Defendants to restore Plaintiff to one of the positions to which she is entitled by the virtue of her application and qualifications, and expunger her personnel file of all negative documentation;

b. Awarding damages, including actual, economic, non-economic, general, special, incidental, statutory, punitive, treble, liquidated, and consequential to Plaintiff in an amount to be determined at trial;

c. Awarding Plaintiff damages for the mental anguish and distress caused by Defendants' unlawful conduct;



d. Awarding pre-judgment and post-judgment interest as provided by law;

e. Awarding reasonable attorneys' fees and costs; and

f. Awarding such other and further relief that this Court deems appropriate.

Respectfully submitted,

Brian D. Spitz (0068816)
Daniel S. Dubow (0095530)
THE SPITZ LAW FIRM, LLC
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax: (216) 291-5744
Email: brian.spitz@spitzlawfirm.com
daniel.dubow@spitzlawfirm.com

*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Denise Ridenour demands a trial by jury by the maximum number of jurors permitted.

Daniel S. Dubow (0095530)

